**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2879
_____

WILLIAM D. TURNER,
                                        Appellant

v.

JOHN E. WETZEL, Secretary of Corrections; CORRECTION CARE SOLUTION;
CARL KELDIE; JOSEPH SILVA, Department of Corrections
Health Care Service Director; DR. PAUL NOAL; DR. JAY COWAN;
THE DOC'S HEPATITIS C COMMITTEE; MA KUREN, SCI Frackville;
KURAS; MS. CHDA; SHARON SELBI, RN; KAREN HOLLY; JOHN DOE;
DR. HARESH PANDYA; TONY IANUZZY, Practitioner
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 4-18-cv-00361)
District Judge: Honorable Matthew W. Brann
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 1, 2022
Before: KRAUSE, BIBAS and SCIRICA, Circuit Judges

(Opinion filed August 19, 2022)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Appellant William D. Turner, proceeding pro se and in forma pauperis, appeals from the District Court's judgment in favor of the defendants on his claims relating to the medical care he received in prison for his Hepatitis C infection. For the reasons discussed below, we will affirm in part and vacate in part.

I.

Turner, a Pennsylvania state inmate serving a life sentence, was diagnosed with Hepatitis C in the mid-1990s. In his verified operative amended complaint, Turner alleged that various medical and Department of Corrections ("DOC") defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth and Fourteenth Amendments, by denying him treatment for his chronic Hepatitis C until after he filed his lawsuit and developed cirrhosis.[1] Specifically, Turner alleged defendants denied him treatment with direct-acting antiviral medications with a high cure rate for no medical reason and because of the cost of the treatment.

In March 2019, the medical and DOC defendants filed separate motions to dismiss Turner's amended complaint for failure to state a claim, which the District Court granted in part and denied in part. Turner's claims were allowed to proceed against medical

---

[1] Turner initially brought this action in January 2018 in the Court of Common Pleas for Schuylkill County, and the action was removed to federal court by defendants.

defendants Correct Care Solution, Dr. Pandya, and CRNP Iannuzzi, as well as against a DOC defendant who was later dismissed. After discovery, those medical defendants sought summary judgment, and a magistrate judge recommended it be granted in their favor on Turner's Eighth and Fourteenth Amendment claims.

By order entered September 28, 2021, over Turner's objections, the District Court adopted the Report and Recommendation in its entirety and ordered Turner's case closed. Turner filed a timely notice of appeal, specifying the September 28, 2021 order, as well as an August 27, 2021 order denying his motion for appointment of counsel.

## II.

We have jurisdiction under 28 U.S.C. § 1291.[2] We exercise plenary review over a grant of summary judgment, applying the same standard that the District Court applies. Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 141 (3d Cir. 2017). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[2] While Turner asserts that he is appealing the orders of August 27 and September 28, 2021, his opening brief addresses only the District Court's grant of summary judgment in favor of the medical defendants on his Eighth and Fourteenth Amendment claims. We therefore deem forfeited any challenge to the ruling denying the appointment of counsel and any of the District Court's other rulings. See In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016) (deeming forfeited arguments that were not developed in the appellants' opening brief); see also Mala v. Crown Bay marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that pro se litigants "must abide by the same rules that apply to all other litigants"); Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993) (noting that appellants are required to set forth the issues raised on appeal and present an argument in support of those issues in their opening brief).

Civ. P. 56(a).  We may affirm on any basis supported by the record.  See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

Prison officials "violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs by intentionally denying or delaying access to medical care or interfering with the treatment once prescribed." Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (quotation marks and citation omitted). "We have found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  However, mere allegations of medical malpractice or disagreement as to the proper medical treatment is insufficient to support an Eighth Amendment claim.  Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 843 F.2d 326, 346 (3d Cir. 1987).  Because the inquiry turns on facts and circumstances specific to each case, whether a defendant's conduct amounts to deliberate indifference has been described as a "classic issue for the fact finder."  See A.M. ex rel. JMK v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 587-88 (3d Cir. 2004) (citing Armstrong v. Squadrito, 152 F.3d 564, 577 (7th Cir. 1998)).

There is no dispute that Hepatitis C constitutes a serious medical need.  See, e.g., Mitchell v. Nobles, 873 F.3d 869, 876 (11th Cir. 2017).  Turner alleged that the medical

defendants were deliberately indifferent to that need by denying and/or delaying treatment for his condition for nonmedical reasons.  In the Report and Recommendation adopted by the District Court, the magistrate judge concluded that Turner's claim rested exclusively on the mistaken "premise that he was denied antiviral medical treatment for [H]epatitis C for more than two years after lab reports first indicated that his liver had become cirrhotic," and that Turner was not challenging "the protocols or policies that provided guidance to the defendants in making their treatment decisions."  D.Ct. Dkt # 138 at 28.  The Report and Recommendation further asserted that Turner's claim "relies solely on his own lay opinion regarding the proper course of treatment for his [H]epatitis C infection . . . and on a purely conclusory allegation that he was denied that course of treatment due [to] non-medical reasons (i.e., cost)."  Id. at 48-49.

Recounting the monitoring of Turner's condition through the Hepatitis C clinic, the Report and Recommendation noted that Turner was regularly seen and evaluated, and his liver disease was repeatedly assessed as being stable.[3]  The Report again reiterated that Turner's claim hinged on his mistaken belief that his liver had become cirrhotic more than two years earlier, and that he had "failed to point to any evidence whatsoever that suggests that the medical defendants knew that he faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate the risk."  Id. at 51-

---

[3] There is no dispute that Turner was seen in the chronic care clinic at regular intervals by Iannuzzi and Dr. Pandya, who monitored the progression of his condition and made assessments about how well his liver disease was controlled.

5

52. The Report further determined that there was no "evidence whatsoever that the issue of cost was a factor in the treatment of Turner's medical condition," and that medical defendants were entitled to summary judgment with respect to Turner's claims of inadequate medical treatment. Id. at 52.

First, we disagree that Turner's Eighth Amendment claim rests solely on the mistaken belief that his lab results showed cirrhosis as early as March 2016. Rather, Turner relied on documents attached to his complaint to claim that, as far back as 2015, he sought treatment with newly approved direct-acting antiviral medications which, unlike prior treatments, had shown high rates of success in treating chronic Hepatitis-C. See, e.g. D.Ct. Dkt # 46 at 26. Turner claimed that his condition was causing him ongoing health issues, and that he was provided with no medical justification for why he "could not receive treatment for Hep-C when Harvoni has a 99 percentage cure rate." D.Ct. Dkt # 46 at 6. Turner alleged that Hepatitis C infection can cause cirrhosis and irreversible scarring of the liver, and that each day without treatment "increases the likelihood of cirrhosis as well as death." Id.

We further disagree with the Report's conclusion that Turner "does not challenge the protocols or policies that provided guidance to the defendants in making their treatment decisions." D.Ct. Dkt # 138 at 28. While Turner's complaint and subsequent submissions can be difficult to decipher, Turner clearly sought to challenge the constitutionality of the DOC policies and protocols regarding the provision of Hepatitis C

treatment to inmates. Turner's operative complaint, for example, specifically referenced "policies" and "decisions on protocol for treatment," D.Ct. Dkt #46 at 2-3, as well as citing to case law within the Middle District of Pennsylvania calling into question the constitutionality of DOC's Hepatitis-C protocols for treatment with antiviral medications. See Abu-Jamal v. Wetzel, 3:16-cv-2000, 2017 WL 34700 at *11, (M.D. Pa. Jan. 3, 2017) (determining the DOC Hepatitis C treatment protocol presented a "conscious disregard of a known risk that inmates with fibrosis … will suffer from [H]epatitis C related complications, continued liver scarring and damage progressing into cirrhosis").

Further, in his brief in opposition to summary judgment, Turner stated that the medical defendants "denied treatment for [H]epatitis C even though Defendants knew the policy was unconstitutional." D.Ct. Dkt # 110 at 2. Again, while sometimes difficult to decipher, Turner's submissions were undoubtedly asserting his belief that DOC's Hepatitis C protocols were unconstitutional, that defendants were aware of that fact due to rulings in similar cases in the Middle District of Pennsylvania, and that the policy constituted a nonmedical basis for the denial/delay of treatment. Turner noted as well that, according to the Centers for Disease Control, chronic Hepatitis C can cause progressive inflammation of the liver, which can lead to scarring (fibrosis) and extreme scarring (cirrhosis), both of which affect liver function, and that, despite those risks, defendants denied him treatment for his Hepatitis C. Id. at 8.

Even if Turner did mistakenly believe that he was diagnosed with cirrhosis in March 2016, the undisputed facts establish that Turner nonetheless had chronic Hepatitis C for which he sought treatment with antiviral medications since at least 2015. By December 2018, prior to receiving antiviral treatment in April 2019, he was diagnosed with cirrhosis. Further, Turner alleged that he was denied earlier treatment with antiviral medications for nonmedical reasons. While Turner alleged cost was one such nonmedical reason,[4] broadly construing his submissions, Turner also alleged the denial was the result of DOC Hepatitis C treatment protocols.

The medical defendants assert that the judgment in their favor on Turner's Eighth Amendment claims should be affirmed because the record demonstrates that Turner received complete and adequate care for his Hepatitis C and other chronic conditions, and that he was routinely monitored, including blood work every six months. While the medical records submitted in support of summary judgment do chronicle the monitoring of his condition, notably absent was any declaration from a medical provider to support the assertion that routine monitoring constituted adequate care for the treatment of Hepatitis C. Further, defendants fail to address how, if Turner received complete and

---

[4] The Report and Recommendation found that there was no evidence "whatsoever" that cost played a role in denying Turner treatment. However, Turner submitted a notorized affidavit verifying the facts set forth in both his complaint and the attached exhibits, one of which included the grievance in which Turner asserted that defendant Iannuzzi told him that the new treatment was "too expensive." D.Ct. Dkt. # 46 at 26. Defendants have submitted nothing to refute this.

8

adequate care, his condition went from "improving" in October 2018 to cirrhosis in December 2018. Accordingly, a fact finder could reasonably conclude that monitoring a condition rather than treating with an available medication constituted deliberate indifference to a serious medical need, and that the delay in treatment contributed to Turner's development of cirrhosis.[5]

Despite Turner's repeated references to policies and protocols regarding treatment, which were clearly references to the DOC Hepatitis C treatment protocols,[6] neither the medical defendants nor the District Court addressed his assertions that the protocol was a nonmedical factor considered in denying or delaying his treatment with antiviral medications. Thus, there exists a genuine issue of material fact regarding whether the policy caused a delay in treating Turner with antiviral medications, during which time he

---

[5] Iannuzzi and Pandya assert in a footnote in their appellate brief that "pursuant to the PADOC's Hepatitis C treatment protocol, this decision [to approve treatment with antiviral medications] belonged to, and was exercised by, DOC's chief medical officer, and not Defendants." 3d Cir. Dkt. # 21 at 28, n.2. Defendants are free to develop any arguments relating to personal involvement in treatment decisions on remand.

[6] Those protocols are part of the District Court record and were submitted by DOC defendants as an attachment to their brief in opposition to Turner's request for a preliminary injunction in which he sought a court order directing defendants to treat him with antiviral medications after he was diagnosed with cirrhosis. See D.Ct. Dkt # 48-4 at 17-28. Turner withdrew that motion after he began treatment with antiviral medications in April 2019.

developed cirrhosis, and whether such delay constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment.[7]

### III.

Accordingly, we will vacate the District Court's September 28, 2021 judgment to the extent that it granted summary judgment in favor of the medical defendants on Turner's Eighth Amendment claims relating to deliberate indifference to his serious medical needs. We will affirm the District Court's judgment in all other respects. This matter is remanded for further proceedings consistent with this opinion and with direction to the District Court to promptly appoint counsel for Turner upon remand.[8]

---

[7] As to Turner's Fourteenth Amendment equal protection claim based on the denial of treatment for his Hepatitis C, the District Court properly granted summary judgment in favor of defendants as Turner has failed to allege or raise a material issue of fact demonstrating that he was treated differently because he is a member of a suspect class or because he exercised a fundamental right, or that he was otherwise treated differently from others similarly situated. See City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985); Renchenski v. Williams, 622 F.3d 315, 337 (3d Cir. 2010). To the extent that Turner asserts a Fourteenth Amendment substantive due process claim, we agree that such claim is duplicative of Turner's Eighth Amendment claim. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994) (internal quotation marks and citation omitted).

[8] Turner's "Motion to Correct Case Law," 3d Cir. ECF No. 34, is granted.